## The Inhabitants of Westborough *vs.* The Inhabitants of Rehoboth.

The third section of *St.* 1811, *c.* 133, for dividing the town of Rehoboth, and establishing the town of Seekonk, which provided that one half of the paupers, for which the town of Rehoboth was chargeable, including such as had removed therefrom, if lawfully returned there for support, should be delivered over to the overseers of the poor of the new town, to be there supported, did not change the general law (*St.* 1793, *c.* 34, § 2; Rev. Sts. *c.* 48, § 2, *cl.* 10) relating to the settlement of the inhabitants of a town, on a division thereof, as to the settlement of the paupers referred to in such act.

THIS was an action of assumpsit for the support of Benjamin B. Pettis, a pauper, whose settlement was alleged to be in the town of Rehoboth. The trial was before *Hopkinson*, J., in the court of common pleas. It being admitted, that the expenses sued for had been incurred by the plaintiffs, as alleged by them, and that the defendants had received due notice, it was contended, on the part of the plaintiffs, that the pauper derived his settlement through his father, Ira Pettis, from James Pettis, his grandfather, whose settlement was in Rehoboth.

To establish the settlement of James Pettis, the plaintiffs

16*

offered evidence of his residence in Rehoboth from 1768 to 1799; of the publication of intentions of marriage between him and Mary Streeter, on the 8th of October, 1768; of the births of children of James and Mary Pettis, in the record of births in the town of Rehoboth, at different times from 1769 to 1795, and among others that of Ira Pettis, the father of the pauper, on the 17th of May, 1795; that James Pettis, after the year 1799 (but the precise time when did not appear), removed to the town of Hopkinton, in the county of Middlesex, where he resided until the year 1819; that during his residence in Hopkinton, he at different times received relief as a pauper from the defendants; that in the year 1819, James Pettis and his wife were removed, at the expense of the defendants, to Rehoboth, and there supported as paupers until their death, three or four years afterwards; and that in the year 1820, Ira Pettis, the son of James and father of the pauper, received aid from the town of Hopkinton, as a pauper, and that the expense so incurred was repaid by the defendants.

The defendants introduced as a witness the town clerk of Rehoboth, who stated that there were records of that town from 1643, but that for some years there were no assessors' lists to be found, and that he had examined the books of the town, to see if James Pettis had been assessed. The plaintiffs objected to any testimony of the witness as to the contents of the books; but the court permitted him to testify, that he had made such examination and found no such assessment.

The defendants also introduced Peter Wheaton, who testified that he was born in 1768, in the then town of Rehoboth; that his birth took place and he had ever since resided upon that part of the town which was afterwards incorporated as Seekonk; that he had known James Pettis from his (witness's) boyhood to 1799; that during all this time, James Pettis resided in that part of Rehoboth, which afterwards became Seekonk; and that he (the witness) could recollect things which occurred when he was ten years old.

The town of Seekonk was incorporated by the act of

1811, *c.* 133, passed on the 12th of February, 1812, the third section of which provided, that all the expenses arising for the support of the poor of Rehoboth, with which it was then chargeable, together with such poor as had removed out of Rehoboth prior to the act, but who might thereafter be lawfully returned to said town for support, should be equally divided between Seekonk and Rehoboth; and that when the town of Seekonk should be organized, the paupers, whether supported in whole or in part only, should be divided as nearly as might be, and one half of the number delivered over to the overseers of the poor of that town, to be by them in future supported.

The court instructed the jury, upon this evidence, that if they believed the facts stated by Wheaton, as to the residence of James Pettis, they would not be warranted in finding that the settlement of the pauper was in the town of Rehoboth; and the jury having returned their verdict accordingly for the defendants, the plaintiffs alleged exceptions.

*B. F. Thomas,* for the plaintiffs.

*N. Morton,* for the defendants, relied on *West Boylston* v. *Boylston,* 15 Mass. 261; *Brewster* v. *Harwich,* 4 Mass. 278, 281; *Windham* v. *Portland,* 4 Mass. 384; *Hanson* v. *Pembroke,* 16 Pick. 197; *Lexington* v. *Burlington,* 19 Pick. 426; *Princeton* v. *West Boylston,* 15 Mass. 257.

METCALF, J. The facts to which the law is to be applied in this case must be taken to be as follows: James Pettis, the grandfather of the pauper for whose support the plaintiffs seek to charge the defendants, had a legal settlement in Rehoboth, in 1812, when that town was divided, and a part of it incorporated into a new town, called Seekonk. He removed from Rehoboth in 1799, when his son Ira, the father of the pauper, was only four years old; and his last dwelling-place was in that part of Rehoboth which is now Seekonk. Neither the grandfather nor father of the pauper ever acquired a settlement in any other town, and of course the settlement of the pauper is the same as theirs, until he acquires a new one; which he has not yet done.

What is the law, on these facts? By *St.* 1793, *c.* 34, § 2,

(reënacted in the Rev. Sts. *c.* 45, § 1, *cl.* 10,) " upon the division of towns, or districts, every person having a legal settlement therein, but being removed therefrom at the time of such division, and not having gained a legal settlement elsewhere, shall have his legal settlement in that town or district wherein his last dwelling-place or home shall happen to fall upon such division." By this provision, the settlement of the pauper's grandfather and father was transferred to Seekonk, upon the division of the town of Rehoboth. So of the settlement of the pauper, if he was born before the division. If he was not born till afterwards, then, by virtue of another provision in *St.* 1793, *c.* 34, § 2, he follows and has the settlement of his father.

It was argued for the plaintiffs, that by the act incorporating Seekonk, (*St.* 1811, *c.* 133, § 3,) the provisions of the general law are so changed as to fix the pauper's settlement in Rehoboth. But we are clearly of opinion, both on principle and on the authorities cited by the defendants' counsel, that the general law must be applied to this case.

*Exceptions overruled.*